IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LAURA C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:22CV744 |
| | ) |
| MARTIN J. O'MALLEY,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Laura C. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The Parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on August 14, 2019, alleging a disability onset date of June 28, 2017. (Tr. at 15, 171-72.)[2] She was last insured under Title II on December 31, 2018, so her application sought to establish disability during the period between June 28, 2017 and December 31, 2018. Her application was denied initially (Tr. at

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

67-77, 86-89) and upon reconsideration (Tr. at 78-85, 94-98). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at. 99-100.) On September 13, 2021, Plaintiff, along with her attorney, attended the subsequent telephonic hearing, at which both Plaintiff and an impartial vocational expert testified. (Tr. at 15.) Following this hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 26), and on July 5, 2022, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation omitted).

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (internal quotation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation omitted). "If there is evidence to justify a refusal to direct a

2

verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 *et seq.*, provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 *et seq.*, provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" from her alleged onset date of June 28, 2017 through her date last insured of December 31, 2018. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 18.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> chronic pain syndrome, spondylosis, lumbar spine degenerative disc disease, status post cervical fusion, cervicalgia, and obesity[.]

(Tr. at 18.) The ALJ found at step three that none of the impairments identified at step two, individually or in combination, met or equaled a disability listing. (Tr. at 20-21.) She therefore assessed Plaintiff's RFC and determined that Plaintiff could perform light work with the following, non-exertional limitations:

5

> [S]he would be limited to occasional climbing of ramps and stairs; occasional kneeling, crawling, crouching, and stooping; no climbing of ladders, ropes, and scaffolds; frequent reaching overhead; no driving an automobile for completion of job tasks; and frequent handling and fingering.

(Tr. at 21.) Based on this determination and the testimony of a vocational expert, the ALJ determined at step four of the analysis that Plaintiff remained capable of performing her past relevant work as a travel agent. (Tr. at 25.) The ALJ also noted the vocational expert's testimony that Plaintiff "has acquired job skills that would transfer to other sedentary jobs within the [RFC]." (Tr. at 26.) In light of these findings, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 26.)

Plaintiff now raises two challenges to the ALJ's RFC assessment. Specifically, she contends that the ALJ erred by failing to (1) "perform a proper function-by-function evaluation of Plaintiff's ability to handle and finger with the non-dominant [left upper extremity] when formulating her RFC," and (2) "analyze and account for Plaintiff's medication side effects in the RFC." (Pl.'s Br. [Doc. #11] at 4, 8.) After a thorough review of the record, the Court finds that neither of Plaintiff's arguments require remand.

A. Function-by-function assessment

Plaintiff first argues that, in assessing her RFC, the ALJ erred by failing to perform a function-by-function evaluation of evidence relating to Plaintiff's ability to sit, despite evidence suggesting greater limitations. As Social Security Ruling ("SSR") 96-8p instructs, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including the functions listed in the regulations. Social Security Ruling 96-8p: Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 61 Fed. Reg. 34474, 34475, 1996

6

WL 374184, at *1 (July 2, 1996). "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016) (internal quotation omitted). Further, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 61 Fed. Reg. at 34478, 1996 WL 374184, at *7. An ALJ must "both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal brackets, emphases, and quotation omitted).

The Fourth Circuit has noted that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636 (quoting Cichocki, 729 F.3d at 177). The court in Mascio concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. Mascio, 780 F.3d at 637.

7

Case 1:22-cv-00744-JEP   Document 17   Filed 03/18/24   Page 7 of 16

Here, as set out above, Plaintiff challenges the ALJ's analysis of evidence relating to Plaintiff's ability to handle and finger frequently with her left upper extremity. This contention largely rests upon Plaintiff's subjective complaints, which the ALJ found "not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 22.) Under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. § 404.1529. Moreover, in Arakas v. Commissioner, Social Security, 983 F.3d 83 (4th Cir. 2020), the Fourth Circuit clarified the procedure an ALJ must follow when assessing a claimant's statements:

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.
>
> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. At this step, objective evidence is *not* required to find the claimant disabled. SSR 16-3p, 2016 WL 1119029, at *4-5. SSR 16-3p recognizes that "symptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

983 F.3d at 95 (internal brackets omitted). Thus, the second part of the test requires the ALJ to consider all available evidence, including Plaintiff's statements about her pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 595. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings," Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 416.929(c)(3) and 20 C.F.R. § 404.1529:

(i) [Plaintiff's] daily activities;
(ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;
(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;
(vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

In the present case, as instructed by the regulations, the ALJ considered the entire case record and explained the reasons for deviating from Plaintiff's statements regarding the impact of her symptoms on her ability to work. Whether the ALJ could have reached a different conclusion based on the evidence is irrelevant. The sole issue before the Court is whether substantial evidence supports the ALJ's decision. See Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § 205(g) precludes a *de novo* judicial proceeding and

requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" (internal footnote omitted)).

Here, the ALJ reviewed the medical evidence, the opinion evidence, Plaintiff's testimony, and the record, and explained the analysis of Plaintiff's subjective complaints. Notably, the ALJ recounted Plaintiff's testimony that

> she had [a] cervical fusion procedure prior to the period at issue and has experienced constant neck pain radiating to the shoulders and left arm, left arm atrophy and weakness, back pain radiating to the left hip, and bilateral hand and foot numbness. . . . She rated her neck pain as 7 or 8 out of 10 before medication, and 2 or 3 out of 10 after medication.

(Tr. at 22.) However, the ALJ ultimately determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 22.) In particular, the ALJ explained that all of Plaintiff's treatment notes from the relevant time period reflected full upper extremity strength bilaterally, as well as normal sensory testing, muscle bulk, tone, reflexes, and range of motion in both arms. (Tr. at 23-24, 292, 319, 326, 337, 344, 349-50.) Accordingly, the ALJ found no evidence supporting Plaintiff's reports of left arm muscle atrophy and weakness. Nevertheless, the ALJ acknowledged that EMG testing in August 2018 "showed mild left-side carpal tunnel syndrome" and that Plaintiff continued to experience radiating neck pain on her left side due to her residual cervical spine issues. (Tr. at 23.) As reflected in Plaintiff's testimony, however, medication significantly improved her symptoms. (Tr. at 22, 41, 323.)

Most importantly, the opinion evidence in this case supports the ALJ's determination that Plaintiff could perform frequent handling and fingering with her left hand. The state

10

agency medical consultants at the initial and reconsideration levels both opined that Plaintiff could perform light work with a further limitation to frequent gross manipulation, i.e., handling, with her left upper extremity. (Tr. at 24, 74, 82.) Moreover, neither consultant found that Plaintiff required any level of fingering limitation. (Tr. at 74, 82.) The ALJ found the consultants' opinions "generally persuasive," but specifically noted that she included "additional limitations" to Plaintiff's RFC assessment in light of further information in the complete record, including a limitation to frequent fingering. (Tr. at 21, 24-25.) No opinion evidence or other medical evidence suggests a need for greater restrictions regarding Plaintiff's left hand.

The ALJ thus specifically addressed Plaintiff's handling and fingering limitations, and in setting the RFC the ALJ explicitly relied upon (1) the state agency opinions, (2) the imaging studies which were consistent with the agency opinions, (3) the conservative treatment measures reflected in the records, and (4) the "generally normal physical examination findings of record during the period at issue." (Tr. at 24.)

Plaintiff nevertheless contends that, while the ALJ recounted objective findings and other portions of the medical record, "[w]hat is missing in the ALJ's decision is the analysis connecting the facts to the ultimate conclusion." (Pl.'s Br. at 7.) Specifically, she argues that the ALJ did "not build a logical bridge to her conclusion regarding how *frequently* [Plaintiff] could handle and finger with [her left upper extremity]." (Pl.'s Br. at 7.) However, this argument fails to consider the ALJ's inclusion of, and reliance on, the state agency consultants' opinions. The consultants, whom the ALJ acknowledged as physicians with "substantial experience applying Social Security disability law and policy," reviewed Plaintiff's entire

11

medical record and concluded, based on both Plaintiff's subjective reports and the objective findings, that Plaintiff remained capable of frequent handling during the time period at issue. (Tr. at 24.) The ALJ, noting that the opinions were "consistent with the imaging studies, conservative treatment measures, and generally normal physical examination findings of record during the period at issue," found them "generally persuasive," a finding that Plaintiff does not challenge. (Tr. at 24.) Accordingly, the ALJ adopted the frequent handling limitations opined by the consultants when formulating Plaintiff's RFC assessment. Although the consultants also opined that Plaintiff required no limitations in fingering, the ALJ included the additional limitation to frequent left hand fingering in the RFC based on Plaintiff's subjective complaints. Because the ALJ was entitled to rely on the opinion evidence to create a "logical bridge" linking the evidence to her RFC findings, and because the ALJ's reasoning and analysis is fairly traceable and supported by substantial evidence, the Court finds no basis for remand.

B. Side effects

Plaintiff's argument regarding side effects proves equally unpersuasive. As set out above, Plaintiff contends that the ALJ failed to "analyze and account for Plaintiff's medication side effects in the RFC." (Pl.'s Br. at 8.) Like Plaintiff's first challenge, this contention rests largely on the ALJ's treatment of Plaintiff's subjective complaints. Specifically, as recounted by the ALJ, Plaintiff testified that her mental impairment symptoms were "generally under control, but medication" caused tiredness and Plaintiff further testified "that pain cause[d] concentration difficult[ies] when reading." (Tr. at 22, 47-50.) However, at step two of the sequential analysis, the ALJ determined that Plaintiff's impairments caused "no more than

Case 1:22-cv-00744-JEP   Document 17   Filed 03/18/24   Page 12 of 16

mild limitations in her ability to maintain concentration, persistence, or pace." (Tr. at 19.) In making this finding, the ALJ explained as follows:

> [Plaintiff] testified that her daily activities include using a computer. Further, her function report indicates that she is able to count change, as well as spend about four hours performing chores, including dusting and putting laundry in the dryer. Additionally, [Plaintiff] had generally normal mental status examination findings during the period at issue, including intact attention, intact fund of knowledge, and linear, coherent[,] and goal-directed thought process.

(Tr. at 19) (internal citation to record omitted) (citing Tr. at 229, 316, 319, 322, 326, 331, 337, 344, 349, 352, 358). The ALJ similarly found that Plaintiff had only a mild limitation in "understanding, remembering, or applying information." Specifically, the ALJ explained that:

> In her function report, [Plaintiff] indicates that she could count change, and shop for items by mail, by computer, or in person. Additionally, [Plaintiff] had generally normal mental status examination findings during the period at issue, including intact memory, intact associations, normal language, and ability to answer questions appropriately. For these reasons, the undersigned finds that the claimant would have no more than mild limitations in her ability to understand, remember, or apply information.

(Tr. at 19) (internal citations to record omitted) (citing Tr. at 230, 291-92, 316, 319, 322, 326, 331, 337, 344, 349, 358). Because the ALJ determined that Plaintiff's impairments caused no more than mild limitations in any three "paragraph B" criteria, she concluded that Plaintiff's mental impairment was non-severe. (Tr. at 18-20.) In doing so, the ALJ again noted Plaintiff's testimony "that her symptoms were generally controlled with medications." (Tr. at 18.)

Later in the administrative decision, the ALJ addressed Plaintiff's mental symptoms when discussing the opinions of the state agency psychological consultants. Although the consultants concluded that Plaintiff's file "provided insufficient evidence with which to evaluate [Plaintiff's] claim," the ALJ found this conclusion unpersuasive, noting that the consultants' opinions were "not based upon a review of the full record." (Tr. at 25.) However,

13

the ALJ further noted that Plaintiff's "generally normal mental status examination findings during the period at issue, discussed above, are consistent with no more than mild limitations in her ability to perform basic mental work activities." (Tr. at 25) (citing Tr. at 291-92, 316, 319, 322, 326, 331, 337, 344, 349, 358).

Despite the ALJ's express consideration of Plaintiff's mental complaints, including her testimony regarding treatment and side effects, Plaintiff now argues that "the RFC does not make an allowance for off-task time, lying down during the day, absenteeism, or a limitation to unskilled work due to the sedating effects of [Plaintiff's] medications, and the ALJ never explains why [Plaintiff's] testimony was not supported by the record in this respect." (Pl.'s Br. at 9) (internal citation to record omitted). As noted above, ALJ acknowledged Plaintiff's testimony that her medications made her tired, that she slept "a lot," and that her pain affected her ability to concentrate. (Tr. at 22, 50, 54-55, 56, 57.) Nevertheless, as set out in response to Plaintiff's first argument, substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints. As the fact finder, the ALJ has the sole responsibility for evaluating a claimant's subjective complaints, and a claimant's allegations alone will not establish that she is disabled. Craig, 76 F.3d at 592-93, 594-95; 20 C.F.R. § 404.1529. The ALJ has the discretion to weigh a claimant's complaints against the evidence and reject them, and she did so in this case.

Here, the ALJ repeatedly noted Plaintiff's normal mental status findings throughout the relevant period. (Tr. at 19, 25, 318-19, 322, 326, 337, 349.) Moreover, no treatment notes or medical opinion evidence suggests the need for "off-task time, lying down during the day, absenteeism, or a limitation to unskilled work due to the sedating effects of [Plaintiff's]

medications," as she now claims. (Pl.'s Br. at 9.) As support for these limitations, Plaintiff points to the third-party opinion of her father, who reported that Plaintiff had difficulties with memory, completing tasks, and concentration. (Tr. at 215.) However, the ALJ ultimately concluded that Mr. C.'s statement did "not outweigh the accumulated medical evidence regarding the extent to which [Plaintiff's] impairments limit her functional abilities" (Tr. at 25), and Plaintiff does not directly challenge this analysis. Instead, Plaintiff simply argues that the ALJ failed to account for Plaintiff's medication side effects in the RFC, and "did not even attempt to discount [Plaintiff's] testimony regarding" these side effects. (Pl.'s Br. at 10.) As discussed above, a plain reading of the ALJ's decision belies this assertion. Again, Plaintiff, who bears the burden of proving disability, presents no medical evidence to support the mental limitations she argues were warranted by her testimony. Moreover, even Plaintiff's own testimony professing tiredness and concentration difficulties fails to specifically indicate a need for "off-task time, lying down during the day, absenteeism, or a limitation to unskilled work" as Plaintiff now suggests. (See Pl.'s Br. at 9.) Because the ALJ expressly noted Plaintiff's consistently normal mental findings as a basis for discounting her subjective complaints and further explained her basis for finding only mild concentration difficulties at length in her analysis at step three of the sequential analysis (see Tr. at 19, 25), the Court concludes that substantial evidence supports the RFC in this case.

To the extent that Plaintiff essentially asks the Court to reconsider and re-weigh the evidence presented, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is

15

disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [Plaintiff] is disabled," but rather, "whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained her decision, and clearly explained the reasons for her determination. That determination is supported by substantial evidence in the record. Plaintiff has not identified any errors that require remand, and Plaintiff's Motion to Reverse the Decision of the Commissioner should therefore be denied.

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is AFFIRMED, that Plaintiff's Dispositive Brief [Doc. #11] is DENIED, that Defendant's Dispositive Brief [Doc. #16] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 18th day of March, 2024.

/s/ Joi Elizabeth Peake
United States Magistrate Judge